PRESENT: Hassell, C.J., Koontz, Kinser, Lemons, Goodwyn, and Millette, JJ., and Lacy, S.J.

GUY ANTHONY BANKS, JR.

OPINION BY
v.   Record No. 092455   JUSTICE LEROY F. MILLETTE, JR.
November 4, 2010

COMMONWEALTH OF VIRGINIA

FROM THE COURT OF APPEALS OF VIRGINIA

Guy Anthony Banks, Jr. was convicted of possessing a firearm after having been convicted of a felony, in violation of Code § 18.2-308.2.  Before trial, he moved to suppress the gun and the jacket in which it was discovered as the fruits of an unlawful seizure.  The circuit court denied the motion.  The Court of Appeals, in an unpublished opinion, affirmed, but on a different ground — a ground neither urged by the Commonwealth nor addressed by the circuit court.  We consider whether the Court of Appeals erred in affirming on the alternative ground that Banks consented to the seizure by requesting a jacket following his arrest on other charges.

BACKGROUND

On November 15, 2007, Officers K.S. Mitchell and T.C. Clements of the Lynchburg Police Department arrested Banks in the City of Lynchburg pursuant to multiple warrants that had been issued the previous day as a result of an investigation of an attempted robbery and shooting.  Although the warrants listed Banks' address as 505 Jones Street, the officers

ultimately found him at a home located on 820 Brook Street. When they arrived at the home, Officer Mitchell knocked on the front door, and a woman answered. Officer Mitchell asked her whether Banks was in the home, and she motioned to the upstairs. Officers Mitchell and Clements, along with another officer, then entered the home and started up the stairs. Upon reaching the top step, they encountered another woman. When they asked her where Banks was, she pointed to a bedroom and called out his name. Banks then emerged from the bedroom, and the officers took him into custody in the doorway.

At the time of his arrest, Banks was wearing a long-sleeved t-shirt and mesh shorts, but no shoes or socks. Officer Mitchell testified that it was "a rather cold day," so he asked Banks, who had been handcuffed, "if he wanted to grab his shoes or a jacket" before going outside to the patrol car. According to Officer Mitchell, Banks responded, "yes," and the officers escorted him back to the bedroom. Upon stepping inside, however, Banks told the officers that his shoes were in his car. Officer Mitchell then led Banks outside, collected his shoes, and placed him in the patrol car.

While Officer Mitchell was accompanying Banks outside, Officer Clements remained upstairs talking with a woman who had been in the bedroom with Banks. Officer Clements did not hear Officer Mitchell ask Banks if he wanted a jacket, and Officer

2

Clements "didn't ask [Banks] anything about that." Nonetheless, Officer Clements decided to get Banks one because he was inappropriately dressed for the weather, which Officer Clements described as "45 degrees, [with] 20 to 25-mile-an-hour winds." Officer Clements asked the woman in the bedroom if Banks had a jacket, and she pointed to one that was hanging on the top of the closet door. Officer Clements grabbed the jacket and began searching its pockets for "anything dangerous." "As soon as [he] put [his] hand into the right pocket, [he] felt the butt of a gun." He then immediately pulled his hand out, looked inside, and saw a revolver. At that point, Officer Clements notified Officer Mitchell, and he seized the jacket and gun.

Banks was indicted on multiple charges, including two counts of possession of a firearm by a convicted felon, in violation of Code § 18.2-308.2. Prior to trial, Banks moved to suppress the jacket and gun, claiming that they were seized in violation of the Fourth Amendment because the officers had no authority to reenter and search the bedroom after his arrest.

At the suppression hearing, the Commonwealth advanced four arguments for why Banks' motion should be denied: (1) Banks lacked standing to challenge the seizure; (2) Banks' state of undress created an exigency justifying the seizure; (3) the

seizure was pursuant to a search incident to a lawful arrest;
and (4) the gun would have been inevitably discovered.

The circuit court addressed each of the Commonwealth's
arguments. First, it ruled that Banks had standing because he
had a reasonable expectation of privacy in the bedroom.
Second, it found no evidence that the officers would have
inevitably discovered the gun. Third, it concluded that the
seizure did not arise out of a search incident to a lawful
arrest. Lastly, it considered whether Banks' inappropriate
dress presented an exigency justifying the seizure of the
jacket and, relying on United States v. Gwinn, 219 F.3d 326
(4th Cir. 2000), held that it did. Accordingly, the circuit
court denied Banks' motion. Banks was then tried without a
jury and convicted of one count of possession of a firearm by a
convicted felon.[*]

The Court of Appeals, in an unpublished opinion, affirmed
the denial of Banks' motion to suppress. Banks v.
Commonwealth, Record No. 3059-08-3 (Nov. 10, 2009). It did so,
however, on a ground that was neither argued by the
Commonwealth nor considered by the circuit court. Accepting
Officer Mitchell's version of events, the Court of Appeals
first found that "Banks agreed he wanted a jacket and shoes

---

[*] The two counts in the indictment were merged after the
circuit court granted Banks' motion to strike in part.

4

and, therefore, consented to the retrieval of the jacket from his bedroom, which he willingly re-entered with the officers." Id., slip op. at 4. The Court of Appeals then considered whether Banks' consent was valid and, after finding "no evidence in the record of involuntariness or exploitive, unconstitutional conduct," concluded that it was. The Court of Appeals thus held that "the seizure of the jacket was lawful under the Fourth Amendment as authorized by Banks' consent." Id., slip op. at 4-5. We awarded Banks this appeal.

## DISCUSSION

Relying on our recent decision in Whitehead v. Commonwealth, 278 Va. 105, 677 S.E.2d 265 (2009), Banks contends that the Court of Appeals erred in affirming the denial of his motion to suppress on the ground that he consented to the seizure because the Commonwealth did not argue consent as an independent basis for upholding the seizure, and because the circuit court did not make findings as to consent. In response, the Commonwealth maintains that the Court of Appeals' decision did not contravene Whitehead because the issue of consent was raised in the circuit court, albeit "inartfully," and because "the facts in the record fully support the conclusion that Banks consented to the seizure of his jacket."

We have long said that "[w]e do not hesitate, in a proper case, where the correct conclusion has been reached but the wrong reason given, to sustain the result and assign the right ground." Eason v. Eason, 204 Va. 347, 352, 131 S.E.2d 280, 283 (1963) (citations omitted). But in Whitehead, we limited the application of the "right result for the wrong reason" doctrine to "cases in which the party seeking affirmance" argued the "right ground" to the circuit court. 278 Va. at 114, 677 S.E.2d at 270 (internal quotation marks omitted). Today, in Perry v. Commonwealth, 280 Va. 572, 580, 701 S.E.2d 431, 436 (2010) (this day decided), we recognize and correct that misstep:

> [U]pon reconsideration of the case law on this matter, we are of the view that this principle . . . is inconsistent with prior case law, and is inconsistent with case law that followed it. Failure to make the argument before the trial court is not the proper focus of the right result for the wrong reason doctrine. Consideration of the facts in the record and whether additional factual presentation is necessary to resolve the newly-advanced reason is the proper focus of the application of the doctrine.

Thus, we must consider whether the record supports the Court of Appeals' conclusion that Banks consented to the seizure.

Before beginning our analysis, however, we must clarify what it means to say that the record supports an alternative ground for affirmance. The record supports an alternative ground when it reflects that all evidence necessary to that

6

ground was before the circuit court. And if that evidence was conflicting, then the record must show how the circuit court resolved the dispute — for example, it must demonstrate how contradicting testimony was weighed or credited.

In affirming the denial of Banks' motion to suppress on an alternative ground, the Court of Appeals concluded that Banks consented to the seizure of the jacket. The facts surrounding the seizure, however, were in dispute; and the circuit court made no findings as to consent, resolving the motion on a separate, independent ground: exigent circumstances.

The Court of Appeals found consent based on the testimony of Officer Mitchell, who claimed that Banks answered "yes" when asked if he wanted to grab shoes and a jacket before going outside to the patrol car. But the record also reflects that Banks testified that he never asked for a jacket, and that Officer Clements, who was at Officer Mitchell's side, did not know whether Banks had been asked if he wanted a jacket. Indeed, Officer Clements testified that he grabbed the jacket not because Banks had requested one, but rather because it was cold outside.

To be sure, as the Court of Appeals noted, the general rule on review is that the evidence is viewed in the light most favorable to the prevailing party below. Banks, slip op. at 2 n.3 (citation omitted). But, as discussed above, when

7

considering whether the "right result for the wrong reason" doctrine should be applied, the standard of review is whether the record demonstrates that all evidence necessary to the alternative ground for affirmance was before the circuit court and, if that evidence was conflicting, how it resolved the dispute, or weighed or credited contradicting testimony.

In this case, the record shows that the facts surrounding the seizure were in conflict and that the circuit court neither resolved the dispute nor indicated how it weighed or credited the contradicting testimony as to whether Banks asked for a jacket. As a result, the Court of Appeals was in no position to find that he consented to the seizure, especially considering that it did not "ha[ve] an opportunity to observe the witnesses, their candor, manner and demeanor, and thereby to determine the weight to be accorded their testimony." Dailey v. Commonwealth, 208 Va. 452, 455, 158 S.E.2d 731, 733 (1968).

Because the record in this case demonstrates that the evidence as to whether Banks consented to a seizure of the jacket was conflicting and that the circuit court did not resolve the dispute, we hold that the Court of Appeals erred in applying the "right result for the wrong reason" doctrine to affirm the denial of his motion to suppress on the alternative ground that he consented to the seizure of the jacket.

8

CONCLUSION

For the foregoing reasons, we will reverse the judgment of the Court of Appeals and remand this case.  On remand, the Court of Appeals is directed to consider the issue with which it was presented:  whether the circuit court erred in holding that Banks' state of undress presented an exigency justifying the officers' seizure of the jacket.

Reversed and remanded.