COURT OF APPEALS OF VIRGINIA

Present: Judges Athey, Ortiz and Senior Judge Clements
Argued at Leesburg, Virginia

MICHAEL ANTHONY SHERMAN

MEMORANDUM OPINION* BY
v.        Record No. 1368-22-4          JUDGE JEAN HARRISON CLEMENTS
                                        AUGUST 29, 2023

COMMONWEALTH OF VIRGINIA

FROM THE CIRCUIT COURT OF ARLINGTON COUNTY
Daniel S. Fiore, II, Judge

Marc Canellas, Assistant Public Defender, for appellant.

Collin C. Crookenden, Assistant Attorney General (Jason S. Miyares,
Attorney General, on brief), for appellee.


Michael Anthony Sherman appeals the circuit court's judgment revoking and imposing

the balance of his previously suspended sentence, which was over four years' active

incarceration. Sherman contends that his sentence violated Code § 19.2-306.1(C)'s prohibition

on active incarceration for a first technical violation. Alternatively, Sherman contends that even

if the circuit court had the statutory authority to impose the balance of his sentence, the sentence

imposed was nevertheless an abuse of discretion because it did not account for his mitigating

evidence and was "excessive." Assuming without deciding that Code § 19.2-306.1 applied to

Sherman's revocation proceedings, we hold that Sherman committed a non-technical violation

for which the circuit court had the authority to impose the balance of his previously suspended

sentence. Additionally, we find that the circuit court did not abuse its discretion in fashioning

the length of Sherman's sentence or considering his mitigation evidence.

* This opinion is not designated for publication. *See* Code § 17.1-413(A).

BACKGROUND

On December 6, 2017, the circuit court convicted Sherman of assault and battery of a family or household member, third offense, upon his guilty plea and, on May 4, 2018, sentenced him to five years' incarceration. The court suspended all but "time served"[1] of that sentence conditioned upon successful completion of four years' supervised probation. The court ordered Sherman: to comply with all "probation rules," including that Sherman "[o]bey all Federal, State and local laws and ordinances"; "[r]eport any arrests . . . within three (3) business days" to his probation officer; "[n]ot consume alcoholic beverages to the extent that it disrupts or interferes with [his] employment or orderly conduct or as otherwise ordered by the [c]ourt"; not "unlawfully use, own, possess or distribute controlled substances or related paraphernalia"; and "[n]ot change [his] residence without" his probation officer's permission—which the court designated as Conditions 1, 2, 7, 8, and 10, respectively. Additionally, as "[s]pecial [c]onditions," the court ordered Sherman to (1) complete inpatient substance abuse treatment at "the Phoenix House," (2) complete an anger management program, and (3) "remain drug and alcohol free" while on probation and submit to drug testing to ensure compliance.

Sherman completed the Phoenix House program and anger management treatment as directed but "struggled with substance abuse dependency." In October 2019, Sherman "relapsed" and began consuming alcohol, so Sherman's probation officer transported him to a detoxification facility. After Sherman left the facility in November 2019, he refused to complete another substance abuse program, began consuming alcohol again, and stopped contacting his probation officer. On February 7, 2020, the probation officer reported that Sherman had violated his probation by failing to complete substance abuse treatment as directed, absconding from

---

[1] The record establishes that Sherman served about 256 days in jail between the date of his arrest on September 8, 2017, and his release from confinement on May 21, 2018.

supervision, and consuming alcohol. The circuit court issued a capias on February 13, 2020; Sherman was arrested on April 17, 2020, and admitted to bail. While on bail, Sherman continued to consume alcohol and was convicted of public intoxication. He then returned to the Phoenix House for substance abuse treatment.

On September 11, 2020, the circuit court conducted a revocation hearing based on the reported violations. The court dismissed the probation violations and returned Sherman to supervised probation under the "same terms and conditions."

Around November 17, 2020, Sherman changed his address without notifying his probation officer. Sherman also missed several scheduled appointments in January and February 2021, and his probation officer was unable to contact him until January 23, 2022. Additionally, on January 23, 2022, Sherman was arrested for public intoxication and assault after he drunkenly attacked a restaurant employee, who sustained a concussion and facial injuries. Police found marijuana when they searched Sherman incident to arrest. Sherman did not report his arrest to his probation officer.

On March 25, 2022, based on those circumstances, Sherman's probation officer reported that he had violated Conditions 1, 2, 7, 8, and 10, and the special "No Alcohol" condition.[2] On April 7, 2022, the circuit court issued a capias, and Sherman was arrested on April 23, 2022.

At the revocation hearing, Sherman stipulated that he had failed to report his change of address in November 2020 and his arrest in January 2022 to his probation officer. Sherman maintained, however, that those violations amounted to a "first technical violation" under newly enacted Code § 19.2-306.1(C), which prohibited imposing active incarceration, and he "request[ed] that he be released bed-to-bed to a shelter" for substance abuse treatment. In

---

[2] Sherman's probation officer did not allege that Sherman had absconded from supervision.

support of his request, Sherman proffered that the public intoxication and assault charges arising from the January 23, 2022 incident had been nolle prosequied. In addition, he had "relapsed into drinking" and become homeless after completing the Phoenix House program and anger management treatment in October 2019. Following his first arrest for public intoxication around April 2020, Sherman had continued "drinking" for "over a year" until he "picked up [the] charges that were ultimately nolle prossed." Additionally, Sherman introduced a letter establishing that around February 11, 2022, he arrived at a homeless shelter and began attending "AA" meetings and "applying for jobs." In another letter, Sherman's friend reported that Sherman could "work and s[t]ay clean when he had a stable place to live" but would consume alcohol when he was homeless.

In response, the Commonwealth did "not object" to Sherman's housing "plan" if Sherman's probation officer approved it. The probation officer told the court that she approved Sherman's housing plan, but asserted that Sherman had violated the sentencing order's "no alcohol" requirement, which was a "special condition" rather than a "first-time technical violation." The probation officer thus asserted that the circuit court was "not bound by the [discretionary sentencing] guidelines," which were calculated using the new statutory framework and recommended no active incarceration.

Sherman countered that although the sentencing order required him to remain "alcohol free" while on probation, his drinking amounted to a failure to refrain from the use of "alcoholic beverages to the extent that it disrupt[ed] or interfere[d] with [his] employment or orderly conduct," which Code § 19.2-306.1(A)(vi) expressly defines as a technical violation. Sherman asserted that because he had no prior probation violations, he had committed a "first technical violation" and, therefore, Code § 19.2-306.1(C) prohibited the court from imposing active incarceration.

The circuit court held that Code § 19.2-306.1 did "not apply" to the revocation proceedings because some of Sherman's violation conduct occurred "before the new statute was enacted." Additionally, the court found that there was "proper cause" to revoke the balance of Sherman's previously suspended sentence.[3] Before imposing sentence, the court considered a presentence investigation report that detailed Sherman's lengthy criminal record, including numerous convictions for assault, disorderly conduct, and public intoxication. Based on that evidence and Sherman's purportedly violent conduct while on probation, the court found that Sherman was a danger to himself and the community and that alcohol was his "driver." Accordingly, the court revoked and imposed the balance of Sherman's previously suspended sentence, which was over four years' incarceration.

The circuit court denied Sherman's subsequent motion to reconsider his sentence under Code § 19.2-303. Sherman appeals.

ANALYSIS

"On appeal, '[w]e "view the evidence received at [a] revocation hearing in the light most favorable to the Commonwealth, as the prevailing party, including all reasonable and legitimate inferences that may properly be drawn from it."'" *Green v. Commonwealth*, 75 Va. App. 69, 76 (2022) (alterations in original) (quoting *Johnson v. Commonwealth*, 296 Va. 266, 274 (2018)). "[T]he trial court's 'findings of fact and judgment will not be reversed unless there is a clear showing of abuse of discretion.'" *Heart v. Commonwealth*, 75 Va. App. 453, 460 (2022) (quoting *Green*, 75 Va. App. at 76). "But 'an issue of statutory interpretation is a pure question of law which we review de novo.'" *Id.* (quoting *Green*, 75 Va. App. at 76).

---

[3] The sentencing guidelines include the circuit court's finding that Sherman had violated "condition 7" prohibiting "[u]se [of] alcoholic beverages" and the "No Alcohol" "special condition."

"[W]hen construing a statute, our primary objective is 'to ascertain and give effect to legislative intent,' as expressed by the language used in the statute." *Diaz-Urrutia v. Commonwealth*, 77 Va. App. 182, 190 (2023) (quoting *Cuccinelli v. Rector & Visitors of the Univ. of Va.*, 283 Va. 420, 425 (2012)). "When the language of a statute is unambiguous, we are bound by the plain meaning of that language." *Heart*, 75 Va. App. at 466 (quoting *Cuccinelli*, 283 Va. at 425).

## A. Retroactivity of Code § 19.2-306.1

As a threshold matter, the Commonwealth argues that Code § 19.2-306.1 did not apply to Sherman's revocation hearing because some of his violation conduct—specifically, his failure to notify his probation officer of his address change in November 2020—preceded the statute's effective date of July 1, 2021, albeit the capias was issued after that date. Acknowledging that litigants may agree to proceed under Code § 19.2-306.1 despite its nonretroactivity, the Commonwealth asserts that neither party consented to its application. Sherman concedes that neither party agreed to apply Code § 19.2-306.1, but maintains that the new statutory framework nevertheless applied.

"Code § 19.2-306(A) provides the statutory authority for a circuit court to revoke a suspended sentence." *Green*, 75 Va. App. at 77. Before the change in law, "Code § 19.2-306(C) required a court to revoke the suspended portion of a sentence upon a finding of 'good cause to believe that the defendant ha[d] violated the terms of suspension.'" *Heart*, 75 Va. App. at 461 (quoting 2021 Va. Acts Spec. Sess. I ch. 538). "The court was then permitted to 'again suspend all or any part of this sentence.'" *Id.* (quoting 2021 Va. Acts Spec. Sess. I ch. 538). Effective July 1, 2021, however, the General Assembly "amended and reenacted" Code § 19.2-306(C) to provide that "[i]f the court, after hearing, finds good cause to believe that the defendant has violated the terms of suspension, then the court may revoke the suspension and impose a

sentence in accordance with the provisions of § 19.2-306.1." 2021 Va. Acts Spec. Sess. I ch. 538. Code § 19.2-306.1 "creates two tiers of probation violations: (1) technical violations, based on a probationer's failure to do one of ten enumerated actions, and (2) non-technical violations." *Heart*, 75 Va. App. at 466.

Code § 19.2-306.1 "contains specific limitations on sentencing that apply when a circuit court bases its revocation of a suspended sentence on what the statute refers to as certain 'technical violations' enumerated in the statute." *Green*, 75 Va. App. at 75. For a "first technical violation," a court "shall not impose a sentence of a term of active incarceration." *Henthorne v. Commonwealth*, 76 Va. App. 60, 65 (2022) (quoting Code § 19.2-306.1(C)). "Multiple technical violations arising from a single course of conduct or a single incident or considered at the same revocation hearing shall not be considered separate technical violations for the purposes of sentencing pursuant to this section." Code § 19.2-306.1(A). But the sentencing limitations do not apply to non-technical violations, which include "convict[ion] of a criminal offense that was committed after the date of the suspension" and "violat[ion of] another condition other than (i) a technical violation [in subsection (A)] or (ii) a good conduct violation that did not result in a criminal conviction." *Thomas v. Commonwealth*, 77 Va. App. 613, 622 (2023) (alterations in original) (quoting Code § 19.2-306.1(B)).

Code § 19.2-306.1 "does not apply at a violation hearing when a probationer committed the relevant violations before the change in law *and when revocation proceedings began before the statute took effect*—absent agreement of the parties otherwise." *Delaune v. Commonwealth*, 76 Va. App. 372, 378 (2023) (emphasis added) (citing *Green*, 75 Va. App. at 83). We have not addressed whether the statute applies when, as here, some of the violation conduct occurred before July 1, 2021, but the circuit court issued the capias after that date. *Heart*, 75 Va. App. at 462-63. We decline to do so here because, as explained below, even assuming Code

§ 19.2-306.1 applied to Sherman's revocation proceedings, he committed a non-technical violation for which the circuit court was authorized to impose the balance of his previously suspended sentence.

## B. Probation Violation

Sherman contends that his violation conduct constituted a "first technical violation" under Code § 19.2-306.1, which prohibits active incarceration.[4] Specifically, Sherman argues that although the circuit court required him to "not consume alcoholic beverages to the extent that it disrupts or interferes with [his] employment or orderly conduct or as otherwise ordered by the court" and to remain "alcohol free," his drinking was a failure to "refrain from the use of alcoholic beverages to the extent that it disrupts or interferes with his employment or orderly conduct," which Code § 19.2-306.1(A)(vi) expressly defines as a technical violation. Sherman contends that by adding the language "or as otherwise ordered by the court" and directing him to remain "alcohol free," the circuit court "took the technical violation" defined in Code § 19.2-306.1(A)(vi) and "attempted to transform it into a special condition" to circumvent Code § 19.2-306.1's sentencing restrictions. We disagree.

To begin, the circuit court included the alcohol condition almost three years before the effective date of Code § 19.2-306.1. Code § 19.2-306.1(A) enumerates ten probation violations that are "technical violation[s]." Relevant here, a probationer's failure to "refrain from the use of

---

[4] Elsewhere in his brief, Sherman asserts that the circuit court could have found that he absconded from supervision, which Code § 19.2-306.1(C) defines as a "second technical violation" for which the circuit court may impose up to 14 days in jail. Similarly, the Commonwealth asserts on brief that Sherman admitted at the revocation hearing that he had absconded from supervision. "While concessions of law are not binding on an appellate court, we may accept concessions of fact." *Williams v. Commonwealth*, 71 Va. App. 462, 488 n.9 (2020) (citing *Logan v. Commonwealth*, 47 Va. App. 168, 172 (2005) (en banc)). The record does not support the parties' concessions, as Sherman made no such admission, the probation officer's report did not allege that Sherman had absconded from supervision, and the circuit court did not rely on that as a basis for the revocation.

alcoholic beverages to the extent that it disrupts or interferes with his employment or orderly conduct" is a technical violation. Code § 19.2-306.1(A)(vi). When a probationer's underlying "violation conduct matches the conduct listed in Code § 19.2-306.1(A), it is, by definition, a 'technical violation.'" *Delaune*, 76 Va. App. at 383. Although the violation conduct "need not be identical" to the conduct listed in Code § 19.2-306.1(A) to be a technical violation, the "'underlying' conduct [must] 'match[]' the listed technical violation in the statute." *Thomas*, 77 Va. App. at 624 (quoting *Delaune*, 76 Va. App. at 383). Technical violations defined in Code § 19.2-306.1(A)'s enumerated list of ten violations are subject to the sentencing restrictions under Code § 19.2-306.1(C). *Id.* at 622.

By contrast, Code § 19.2-306.1(B) defines non-technical violations as including criminal convictions for offenses "committed after the date of the suspension" and "violat[ions of] another condition other than (i) a technical violation . . . or (ii) a good conduct violation that did not result in a criminal conviction." *Id.* (quoting Code § 19.2-306.1(B)). For non-technical violations, sentencing courts may "revoke the suspension and impose or resuspend any or all of that period previously suspended."[5] Code § 19.2-306.1(B).

"While 'special condition' is not defined by statute, violations of special conditions [imposed by a sentencing court] are 'non-technical' by nature since they condition behavior" not enumerated in Code § 19.2-306.1(A). *Burford v. Commonwealth*, 78 Va. App. 170, 183 (2023). "To be classified as special conditions, the behaviors must be distinct from the conditions

---

[5] Sherman does not argue that he committed a "good conduct violation that did not result in a criminal conviction" under Code § 19.2-306.1(B) that prohibited the circuit court from imposing the balance of his previously suspended sentence. *See Diaz-Urrutia*, 77 Va. App. at 194 n.4 (declining to address "what sanction Code § 19.2-306.1 authorizes for a good conduct violation"). Regardless, we have held that if a probationer violates "'another condition,' other than the . . . good behavior condition," the sentencing court may impose the balance of the probationer's previously suspended sentence. *Id.* at 194 (quoting Code § 19.2-306.1(B)). Here, because we conclude that Sherman violated a special condition of his suspended sentence, we need not address whether he committed a good conduct violation.

included in Code § 19.2-306.1(A) and courts cannot evade the limiting sentencing scheme for technical violations by 'crafting "special conditions" that encompass conduct defined by the statute as a "technical violation."'" *Id.* (quoting *Thomas*, 77 Va. App. at 625). To be sure, if a probationer violates a "special condition" requiring him "to do something that [i]s covered by the enumerated list of technical violations [in Code § 19.2-306.1(A)]," the violation is "a technical violation, not a special condition" violation because it is based on conduct matching that which Code § 19.2-306.1(A) expressly defines as technical in nature. *Diaz-Urrutia*, 77 Va. App. at 191 (citing *Delaune*, 76 Va. App. at 383). In such a case, the "defendant has committed a technical violation" and Code § 19.2-306.1(C)'s sentencing limitations apply. *Id.* at 194. Conversely, if the violation conduct does not "match[]" that listed in Code § 19.2-306.1(A) but matches conduct covered by a "special condition" imposed by the sentencing court, then it is a non-technical violation not subject to any sentencing limitations. *Burford*, 78 Va. App. at 182-83.

In *Delaune* we held that a probationer's drug use was a technical violation because it was a failure to "refrain from the use, possession, or distribution of controlled substances" under Code § 19.2-306.1(A)(vii), even though the sentencing order required the defendant to remain "drug free" as a "special condition" of her suspended sentence. *Delaune*, 76 Va. App. at 383. We emphasized that the "drug free" condition required the defendant to do nothing more than refrain from conduct expressly defined as a technical violation and, therefore, the defendant's violation of that condition was a technical violation. *Id.*

By contrast, in *Thomas* we held that a defendant's alcohol use violated a "special condition" requiring him to refrain from drinking "*any alcohol*" and his conduct did not amount to a technical violation because Code § 19.2-306.1(A)(vi) "defines using alcohol as a technical violation *only* 'to the extent that it disrupts or interferes with' the probationer's 'employment or

- 10 -

orderly conduct.'" *Thomas*, 77 Va. App. at 625-26. There, the defendant "tested positive" for alcohol while on probation. *Id.* at 618. Accordingly, because the "no alcohol" condition specified in the sentencing order was more restrictive than Code § 19.2-306.1(A)(vi), the defendant's "violation of his probation based on his alcohol consumption [wa]s not a technical violation under subsection (A)(vi)." *Id.* at 626.

Here, as in *Thomas*, the circuit court required Sherman to remain "alcohol free" as a special condition of his suspended sentence. That condition was more restrictive than Code § 19.2-306.1(A)(vi), which "defines using alcohol as a technical violation *only* 'to the extent that it disrupts or interferes with' the probationer's 'employment or orderly conduct.'" *Id.* Sherman does not argue that he did not consume alcohol after his first revocation hearing in September 2020. Sherman's proffer,[6] although ambiguous, was sufficient for the circuit court to find that he had, again, consumed alcohol while on probation. Thus, Sherman's conduct was a special condition violation and, therefore, a non-technical violation. *Id.*

Accordingly, under Code § 19.2-306.1, Sherman committed a non-technical violation of the conditions of his suspended sentence. Thus, the circuit court was authorized to impose the balance of Sherman's previously suspended sentence based on his violation of the "no alcohol"

---

[6] At the revocation hearing, Sherman proffered that "[f]or a long time, for months *and nearly or over a year*" after his arrest in April 2020 for public intoxication, he "was unhoused, *he was drinking* . . . . Then he picked up charges that were ultimately nolle prossed." (Emphases added).

special condition.  *Id.*  Therefore, the circuit court did not abuse its discretion in revoking and

imposing the balance of Sherman's previously suspended sentence.[7]

We acknowledge that "a sentencing court may not immunize its suspended sentences

from the reach of Code § 19.2-306.1 by crafting 'special conditions' that encompass conduct

defined by [Code § 19.2-306.1(A)] as a 'technical violation,'" but that is not what occurred here.

*Diaz-Urrutia*, 77 Va. App. at 191.  Rather, the "no alcohol" condition the circuit court imposed

at the 2018 sentencing was more restrictive than the prohibited conduct enumerated in Code

§ 19.2-306.1(A)(vi).  *See Thomas*, 77 Va. App. at 626 (holding probationer's alcohol

consumption was a special condition violation and not a technical violation under Code

§ 19.2-306.1(A)(vi)).

## C.  Length of Sentence and Weight of Mitigating Evidence

Finally, Sherman asserts that even if the circuit court was authorized to impose the

balance of his previously suspended sentence, his sentence was an abuse of discretion because it

exceeded the length of active incarceration typically imposed for a "state law violation" in

---

[7] We reach this conclusion under the right-result-different-reason doctrine.  Under that doctrine, an appellate court "do[es] not hesitate, in a proper case, where the correct conclusion has been reached but [a different] reason [is] given, to sustain the result [on an alternative] ground."  *Vandyke v. Commonwealth*, 71 Va. App. 723, 731 (2020) (alterations in original) (quoting *Banks v. Commonwealth*, 280 Va. 612, 617 (2010)).  "The record supports an alternative ground for affirmance when it reflects two things."  *Id.* at 732.  "First, it must show that all evidence necessary to that alternate ground was before the trial court."  *Id.*  "Second, that evidence must have been undisputed, or the record must show how the trial court resolved any dispute."  *Id.*  "If additional factual findings would be necessary to support the alternative ground for decision, the doctrine may not be applied."  *Id.*

Although the circuit court held that Code § 19.2-306.1 did not apply to Sherman's revocation proceedings, it nevertheless found that he had violated the "no alcohol" special condition.  Moreover, it is apparent from Sherman's undisputed proffer at the revocation hearing that, after returning to supervision in September 2020, he consumed alcohol.  Accordingly, "the record contains all the information necessary to permit this Court to resolve the appeal on the alternative ground" that even if Code § 19.2-306.1 applied to Sherman's revocation proceedings, he committed a non-technical violation for which the circuit court had the authority to impose the balance of his suspended sentence.  *Id.*

Virginia, which he asserts is approximately 11 months. In addition, Sherman argues that the circuit court abused its sentencing discretion by failing to consider his mitigating evidence, including his efforts to stop drinking alcohol and to obtain housing and employment.

Under Code § 19.2-306.1, trial courts "may revoke the suspension and impose any or all of the previously suspended sentence" if a probationer commits a non-technical violation other than a good conduct violation under Code § 19.2-306.1(B). *Diaz-Urrutia*, 77 Va. App. at 189.

The record demonstrates that Sherman continued to consume alcohol while on probation in violation of the circuit's court's explicit directive to remain "alcohol free." Thus, it was within the circuit court's discretion to "impose or resuspend any or all" of the previously suspended sentence. *Diaz-Urrutia*, 77 Va. App. at 189. It was equally "within the trial court's purview to weigh any mitigating factors" Sherman presented, including his efforts to stop drinking and obtain housing and employment. *Keselica v. Commonwealth*, 34 Va. App. 31, 36 (2000). But the circuit court was not obligated to explain the specific weight it assigned to each piece of evidence, as Sherman implies. Indeed, "[a]bsent a statutory requirement to do so, 'a trial court is not required to give findings of fact and conclusions of law.'" *Bowman v. Commonwealth*, 290 Va. 492, 500 n.8 (2015) (quoting *Fitzgerald v. Commonwealth*, 223 Va. 615, 627 (1982)); *see also Bassett v. Commonwealth*, 13 Va. App. 580, 584 (1992) ("Barring clear evidence to the contrary, this Court will not presume that a trial court purposefully ignored mitigating factors in blind pursuit of a harsh sentence.").

The record belies Sherman's contention that the circuit court did not consider his efforts to quit drinking and obtain housing and employment. Rather, the circuit court expressly considered those circumstances in determining whether to transfer Sherman "bed-to-bed to a shelter" for substance abuse treatment rather than imposing an active period of incarceration. Balanced against that evidence, however, was Sherman's lengthy criminal history comprising

multiple convictions for assault, disorderly conduct, and public intoxication. In addition, Sherman disregarded the circuit court's clear instruction not to consume alcohol. Based on that evidence, the circuit court found that Sherman was a danger to himself and the community and that his conduct justified imposing the balance of his previously suspended sentence. Merely because the circuit court did not reach Sherman's desired conclusion does not render his sentence an abuse of discretion.

To the extent that Sherman challenges the proportionality of his sentence, this Court declines to engage in a proportionality review in cases that do not involve life sentences without the possibility of parole. *Cole v. Commonwealth*, 58 Va. App. 642, 654 (2011). We noted in *Cole* that the United States Supreme Court "has never found a non-life 'sentence for a term of years within the limits authorized by statute to be, by itself, a cruel and unusual punishment' in violation of the Eighth Amendment." *Id.* at 653 (quoting *Hutto v. Davis*, 454 U.S. 370, 372 (1982) (per curiam)). *Cf. Vasquez v. Commonwealth*, 291 Va. 232, 243 (2016) (rejecting Eighth Amendment challenge to a 133-year active sentence because the sentence was imposed for "eighteen separate crimes"). Accordingly, we decline to conduct a proportionality review in this case. *Id.*

CONCLUSION

For the above reasons, we hold that even if Code § 19.2-306.1 applied to Sherman's revocation proceedings, he committed a non-technical violation, so the circuit court was authorized to impose the balance of his previously suspended sentence. Moreover, the circuit court did not abuse its discretion in fashioning the length of Sherman's sentence or considering his mitigation evidence. Accordingly, we affirm the circuit court's judgment.

*Affirmed.*